May it please the court, Alina Schell, Assistant Federal Public Defender. That's a dangerous admission. You wouldn't be very vigilant if somebody was making a lot of mistakes. Your Honor, I'd like to think that we're here to correct mistakes. And we have quite a few to correct, unfortunately. May I proceed, Your Honor? Yes, please do. Thank you. Alina Schell, Assistant Federal Public Defender, on behalf of Mr. Dwight Jackson. In this case, Your Honors, Mr. Jackson, unlike my prior case that I was arguing, actually did receive a good faith instruction in a tax evasion case. And in this case, Your Honors ---- Is that the usual practice in Nevada to give good faith instructions in these tax cases? It is not the typical practice. It is the typical practice when it is requested and the evidence is sufficient to support the instruction to receive one. And this was a subject in when I was looking back at the record yesterday, a subject of some debate whether Mr. Jackson was entitled to a good faith instruction. And after hearing argument from counsel on both sides, the court determined that in this particular case the evidence supported giving the good faith instruction. And in this case ---- All right. I don't want to get you off on that. You've got enough problems in this case. I don't know what you're referring to, Your Honor. Shall we listen? In this case, Your Honor, the evidence here was insufficient to support Mr. Jackson's multiple convictions for tax evasion. The evidence here presented by Mr. Jackson, well, admittedly not presented by Mr. Jackson, but presented during the course of the trial, was that Mr. Jackson was a part of a movement called the Sovereign Citizens Movement. And part of this movement, and I admit, Your Honors, it's one of these things where I had to spend a lot of time reading to figure out what exactly his claims were. But the Sovereign Citizen Movement essentially believes that the tax laws are being improperly applied by the IRS. Let me stop there. Yes, sir. That's not in the record, is it? It is in the record, Your Honor. That these theories of the Sovereign Movement were theories that he relied on? Yes, Your Honor. If you look at, there's testimony from Agent Steiner, who was an IRS agent. And he went out during the course of an investigation of an unrelated legal matter. Mr. Steiner went out and talked to Mr. Jackson. Okay. So you're relying on the agent's testimony about what your client said? That is part of the record, Your Honor, yes. And that's part of what I'm relying on. I'm also relying on the evidence. Did your client ever testify that he's part of the Sovereign Movement himself, as opposed to getting advice from some of those people and relying on that advice? He did not testify during the trial, Your Honor. However, there are testimonial documents submitted into the record that were affirmed by Mr. Jackson that outlined what his beliefs were. And I'll point, Your Honors, to the letters he sent to the IRS? There are the letters. That is not part of the record I submitted to this Court that is discussed in the trial at length, Your Honors, when the IRS began sending him these CP-2000 letters saying, you owe money, here's our proposed settlement. He disputed them in writing multiple times. But didn't he also tell the agent he didn't understand the rationale for taking that position? That was Mr. Steiner's testimony, Your Honor. However, I, you know, if we all understood every concept of everything that we believed, then we'd be very smart people. Just because you don't understand a particular facet of a belief system doesn't mean that it's not an honest belief. And here, I don't think that ---- All right. How can you have an honest belief if you don't know what it is? Your Honor, we don't actually know if that's really what Mr. Jackson said. All that we have is the testimony from Agent Steiner on that point. However, what we do have in the record is ---- But he knew he had no ---- he had wages in the year in which he claimed he had no wages, though. I don't think there's any dispute regarding that. Is there? Your Honor, there's a dispute between ---- he had these two competing definitions of wages and income being these two different things. And he had wages, but he ---- again, Your Honor, it's a bit hard to follow. I mean, it is a really strained logic here. But the argument of the sovereign citizen movement is that wages are different than income. So do you really have to completely understand a movement's philosophy? If you're a member of the Tea Party, do you really have to understand everything that they're saying? Or is it enough, for instance, that you say, I like those people? They seem to have a good philosophy. I'm not sure what it is. But I believe in it. Your Honor, I think that is correct. You don't have to understand every facet of a movement. Or even much about it, other than it stands for the principles of the American Revolution. And that may be good enough to some. Yes, Your Honor. And I think that the evidence here, I mean, certainly as Your Honor pointed out ---- That's right. Thank you, Your Honor. Agent Steiner testified that Mr. Jackson said, well, I don't really understand everything that's going on here. But Agent Steiner also testified that Jackson said multiple times, and he talked about it at three points in the record, where he said to Agent Steiner, I want to effect change at the IRS. Certainly it would be nice if we could understand exactly what those changes he was asking for were. But the clear thrust of this is he had a belief that he was not required to pay income taxes because he was a citizen of the U.S. My problem with this is it went to a jury, and it went to a jury with a good-faith instruction. And if a jury didn't believe that what he was saying, what he was relying on, he didn't rely on in good faith, they made that determination from objective facts, whether you or I or Ted Hawk or anyone would have come to that same conclusion, why couldn't a juror have said, you know, this just doesn't make sense to me. I don't think he was doing this in good faith. How do you reverse that? Your Honor, I think that certainly that is, although typically when we get a jury instruction as a defense attorney, we're very excited that we get something that we ask for. But in this case, I think that what weighs against your question, weighs against the jury's determination of guilt was the closing statements by the government. And in the closing statement by the government, the attorney talks a lot about what a reasonable man Mr. Jackson was, you know, what an intelligent and well-educated man he was because he had an associate and a bachelor's degree in fire science, and that because he was an educated person, he shouldn't have believed these unreasonable beliefs. He was essentially doing for the jury what the court in sheet said you can't do. He's saying these are unreasonable beliefs. You should convict him because these are not reasonable things to think. But isn't that the jury's responsibility to weigh the reasonableness of these and all the other evidence? For example, he was told he can't take ten exemptions, and they stopped doing it. Then he does it again after he was told he couldn't do it. He was told by the agent these are not proper positions to be taken. He continued to do it. Now, I know part of the theory of the sovereign nation is that we're not employees, that we don't have to pay income tax, these are not wages. But how does he explain that he then seeks to earn income? In other words, he paid in, say, $6,000, I think it was, and claimed credit for an additional $8,000. Now, if he's not an employee, how is he entitled to get that earned income payment? Your Honor. Do you see how a jury might find that to be unreasonable? I do, Your Honor. I sort of do. But here's my response to that. First, Mr. Jackson was never told by the IRS that what he was doing was illegal. Now, certainly he had a conversation with Agent Steiner about what his beliefs were, and Agent Steiner said, well, I think you're, you know, basically I think you're wrong. But if you look at supplemental excerpts of records. Didn't he say that the courts have also said those are wrong positions? He may have said that, Your Honor, during the conference. He said not only are they wrong, the IRS says they're wrong, but the courts themselves have said those are wrong positions. He may have said that to Mr. Jackson, Your Honor. However, what the evidence that came out at trial was that the IRS, what an IRS agent says is a little bit different than what the IRS itself was doing. It never audited him. It never assessed taxes. It never responded to his letters saying your beliefs are illegal. And there's no tax court decision in spite of the fact that he kept your, and I see that. So that may be an indictment of the IRS, but now we're talking about your client and what he explained or had others explain for him. And I keep coming back to the same question that Judge Reiner has. Isn't that a jury issue? It is a jury issue. However, I believe that the jury was misled by Mr. the prosecutor's, you know, muddying of the issue by saying this is not a reasonable belief. And that's the question I asked you earlier. In 209, he said he made no wages. Did he or did he not? He did say that, Your Honor. And was he paid biweekly and then, I don't know, weekly or bimonthly, but biweekly, I think, by the city? And did he receive those funds? And the answer to those questions, yes, he did. Yes, Your Honor. And I see that I'm running out of time. Well, he did say that. However, again, it goes back to he has this sort of gobbledygook belief that wages and income are two different things. Yeah, but he can set it forth. The truth. I received X, Y, Z dollars, but I don't consider it wages. But he didn't. He said no wages. Didn't he? Yes, Your Honor, he did. And didn't he have to know that was untrue, just regardless of all his theories and all of his business? Didn't he? Your Honor, he believed that what he was doing was consistent with an appropriate application in his mind of the tax laws. And certainly we know that that's not correct, but it appears to be a very deeply held belief that that's what he was right. Regardless of his philosophy, regardless of anything else, if he was taking his pay biweekly and he was asked, did you get any pay, and he said no, no matter what his philosophy is, a person would ask, no, wait a minute, something's a little wrong. Perhaps a person who wasn't a part of the sovereign citizen movement would know that, but I don't believe my client did. All right. Thank you, Your Honor. And I don't expect you to concede your case. Good morning. May it please the Court. I'm Elizabeth Olsen-White for the United States Supreme Court. The only issue in this case is the sufficiency of the evidence. There's no challenge to a jury instruction. So we are at sufficiency of the evidence, and the question is, is it sufficient? The question is whether any rational fact finder could have found beyond reasonable doubt that the government proved the elements of the offense, including willfulness. There was those two things in our view being simply inconsistent. If a defendant knows of a legal duty, if there is a legal duty that the defendant knows of. But he had a good faith instruction. Yes, he did. Yes, he did. And so they were told that they had to negate. Yes, the jury was instructed that. And I don't ‑‑ I was thinking about your question earlier about the practice in Nevada, and I've seen cases where it's been given in tax cases, and I've seen cases where it hasn't, and I don't know what the ‑‑ Where it's raised as a defense, it would be. And where it's not raised as a defense, it wouldn't be. I've seen it requested and denied. Well, in any event, I don't ‑‑ so I don't know the answer to the general practice. Well, you may not need all 10 minutes to educate. No, no, absolutely not. I just wanted to make a couple of points. First of all, when you're talking about sufficiency of the evidence, we have to look at the evidence that was in front of the jury. And there was very, very little information about the sovereign citizens movement in front of the jury. The government raised the issue of the sovereign citizens movement when Mr. Steiner, Agent Steiner, was testifying, and defense counsel objected on relevance grounds repeatedly. Well, of course, you know, there was evidence. The question for the jury is whether they believe that he relied on that in good faith. Exactly. And so whether there was or wasn't evidence of the citizens, whatever the movement is, you're not automatically home free because you joined the sovereign citizens. No, no, and you're not. So, yes, even if there had been evidence in the record, even if he had testified, in the opening brief, the defendant talks about how he was thoroughly indoctrinated in this movement by 2009, and there's simply nothing in the record to support that. You know, what we have in the record is the defendant filing false W-4s saying that he was exempt from taxes. When the IRS told his employer, no, he isn't, you know, correct this, they informed him that the IRS says you're not exempt from taxes and we have to change your W-4. And he didn't complain. He didn't say, no, wait, that's not right. He just went on to a different scheme, which is filing tax returns, saying that the amount of money that he earned was coincidentally exactly the money, exactly the amount that his employer withheld from his taxes. The IRS sent him letters. Every time the IRS sent him a letter, he- They did more than that, too, didn't they? Going- The earned income tax credit, yes. So on the one hand, he's saying in one of these form letters that Mr. Matatal gave him that he just filled out and submitted, which he explained to Steiner he didn't really understand. You know, he said he's not a person under the definitions in the tax code, and yet he's applying and receiving the earned income tax credit. So in this case, there are inferences that the defense would like this court to draw from the evidence, and bottom line is the jury was not required to draw those inferences. The jury drew different inferences, and on appeal, all of the inferences are supposed to be made towards the jury's verdict, and so that's what we have here. Thank you. Thank you. You've used your time, I think, but if you want to- Unless the Court has any further questions, Your Honor, I think I'm done here. I think so. Thank you, counsel. The case is here and will be submitted.
judges: Huck, Farris, Reinhardt